The facts are, that in January, 1813, the defendants, claiming a right derived under the entry of one Petrie, sold their shaves of it to the complainant. It was an entry of a saltpetre cave. He gave divers notes for the payment of the purchase-money, some to persons that the defendants owed, and some to themselves respectively. The greater part of these notes has been paid. The entry is included within the bounds of lands granted in 1795 to S. Donnelson. The entry was therefore void which Petrie made, and which the defendants sold. Bailey Butler, who made the contract, stated the value of the cave to be $20,000. The cave was rented to several persons to be used till each made a certain quantity of saltpetre; the rent of 3,500 pounds of saltpetre was by the contract to be paid to the complainant, and Bailey and Butler refused to give up the notes securing the payments. The produce was stated by Bailey and Butler to be six pounds for every bushel of dirt in 1801, and that it would be more afterwards. It was far inferior to this representation. What is the law to be applied to this statement? If in the formation of a contract, fraud intervene, and mix in it, and the purchaser rely upon qualities and properties as attached to the thing purchased, because stated by the latter, which do not really exist, and they are such, without which the purchaser probably would not have purchased, then the vendee ought to be discharged from it. 1 Powell on Contracts, 147; Newland, 352, 353. Here is no title, when the vendor held out there was a good one. The complainant was a trespasser by his entry, and is liable to the action of the true owner. The cave is not of the value represented, nor is the *Page 142 
product of the dirt anything equal to the representation. It is true that this statement of facts is supported by the oath of a single witness, but the oath is corroborated by the circumstance of the grant produced, which issued to Stockly Donnelson, and again by the sum given for the cave, which was $2.571. The claim of the complainant for expenses, incurred in erecting a furnace and other buildings? after the purchase, can not be taken into view. These erections were not a part of the contract, but were made by the complainant by his own choice in consequence of the bargain. If we allow damages upon the first consequence, then also upon the second, third, and thousandth. The failure of a postmaster to deliver a letter, giving liberty to pay by a certain day for a lottery ticket, price one dollar, would make him liable to pay to him the letter was addressed to the sum of $20,000, should that ticket afterwards turn out to be a prize for $20,000. In short, the absurdity of such damages is well elucidated by the story of the crockery-ware peddler, who intended by the sale and profits to become a merchant, and then a nobleman of the first order, and afterwards to marry the princess. The trespasser who broke his wares ought, according to this computation, to have paid nearly the value of the Turkish empire. Decree that the whole contract be set aside, that the moneys paid by the complainant be repaid to him, each defendant repaying the sums paid to or for him, and that the notes yet unsatisfied and remaining in, the power of the defendants shall be deposited in the office of the clerk and master of this court in three months, to be cancelled. And that for such notes as are unsatisfied, in whose hands soever they may be, and which shall not then be deposited as aforesaid, that the defendants to whom the same were made payable shall pay the amount thereof and interest to the complainant on the last day of the said three months. And also that the defendant, for whose use *Page 143 
and at whose instance a note or notes was or were given to any third person or persons, shall also pay to the complainant the principal and interest of the sum due thereby, in case the note or notes last mentioned shall not be deposited as aforesaid on the last day of the said three months. And it is decreed that the amount of these several classes of notes, and of the money paid, with all needful specifications of debts, sums and persons receiving and paying, shall be reported by the clerk and master of the court to-morrow morning. And it is further ordered, that the complainant shall, immediately after the date of this decree, relinquish to the defendant all the right, title, and interest in and to the said entry which he hath, or claimed, or may be supposed to have or claim, by the said contract, or any transfer of the plat and certificate of survey or any other transfer made in pursuance of said contract, such relinquishment to be made by deed, to be approved by the clerk and master of this court. And decree further, that the defendants pay the costs of this suit. The defendant is not ordered to account for the use and occupation of the saltpetre cave, for even at law the plea of nil habuit in tenementis would be a good plea against the lessor, if not estopped by the deed of the lessee, and for very good reason the law is so. The lessee is liable to account to the true owner.